## NATIONAL LABOR RELATIONS BOARD v. SHAWNEE MILLING CO.

No. 3906.

United States Court of Appeals
Tenth Circuit.

Aug. 4, 1950.

* § 761, Title 46 U.S.C.A.

58

A. Norman Somers, Assistant General Counsel, Washington, D. C. (David P. Findling, Associate General Counsel, and Abraham H. Maller, Washington, D. C., on the brief) for petitioner.

Kenneth Abernathy, Shawnee, Okl. (G. C. Abernathy, Shawnee, Okl., on the brief) for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This is a conventional proceeding under Section 10(e) of the National Labor Relations Board Act, 29 U.S.C.A. § 151 et seq., as amended by the Labor Management Act of 1947, 29 U.S.C.A. § 141 et seq., in which the Board seeks enforcement of its order of April 19, 1949, against the Shawnee Milling Company, herein called the Shawnee Company, doing business as the Pauls Valley Milling Company, herein called the Pauls Valley Company. The Board found respondent guilty of violating the Act in that the management of the Pauls Valley Company discriminatorily discharged certain employees, refused to bargain collectively with the Union, and violated the Act in other respects.

The facts were stipulated. They established that the Shawnee Company is an Oklahoma corporation; that it owns and operates a flour mill and facilities at Shawnee, Oklahoma, the products of which are shipped in interstate commerce from Shawnee. In addition to a mill at Okeene, it owns a plant at Pauls Valley, Oklahoma. The Pauls Valley plant is operated by a local manager who has complete charge of the activities and operations of that plant, subject only to over-all supervision as to policies, including labor policies, by the officers of the Shawnee Company. The manufacturing processes at the Pauls Valley plant are confined to the manufacturing of chops, hen feed, dairy and hog feed. All the raw materials used there are purchased within the State of Oklahoma, and the manufactured products from that plant are sold and distributed exclusively within the State of Oklahoma. All the purchases of raw materials for use in processing there and all sales made by the Pauls Valley plant are made and handled by the office at Pauls Valley. During 1947, an estimated one per cent of the raw materials used and processed at Pauls Valley originated outside the State of Oklahoma, but during normal years no purchases of raw materials are made by the Pauls Valley branch outside the State. The materials purchased outside the State in 1947 were purchased from branch dealers within the State of Oklahoma.

■ Respondent challenges the jurisdiction of the Board on the ground that the Pauls Valley Company is not engaged in commerce or in activities affecting commerce. It is well settled that the Board's

jurisdiction is not limited to those operations which are interstate in character, but that it also extends to intrastate activities which "affect" commerce.[1] However, the Board's jurisdiction does not obtain merely because a local activity may in some indirect and remote way affect commerce.

As stated by the Supreme Court in National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352,

"Undoubtedly the scope of this power must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government." 301 U.S. at page 37, 57 S.Ct. at page 624.

"The grant of authority to the Board does not purport to extend to the relationship between all industrial employees and employers. Its terms do not impose collective bargaining upon all industry regardless of effects upon interstate or foreign commerce. It purports to reach only what may be deemed to burden or obstruct that commerce and, thus qualified, it must be construed as contemplating the exercise of control within constitutional bounds."[2] 301 U.S. at page 31, 57 S.Ct. at page 621.

Tested by these rules, we conclude tnat the Board lacked jurisdiction. While it is true that Pauls Valley Company is not a separate entity but is a branch plant of Shawnee Company, it does nonetheless operate as a separate unit. Its manager has complete charge of its activities and operations, subject only to over-all supervision as to policies, including labor policies. Such supervision does not, however, mean

that the officers of the Shawnee Company could not exercise its policy with respect to the Pauls Valley Company plant, separate and apart from any connection with any other of Shawnee Company's plants or subsidiaries which were engaged in interstate commerce. To hold that under these conditions the common ownership of the two plants subjects Pauls Valley, a purely intrastate operation, to the jurisdiction of the Board would be to hold that one may not operate two businesses, wholly separate and apart—one engaged in interstate business and the other in intrastate operations—without subjecting both to the jurisdiction of the Board. We know of no case that has gone that far.

The facts in National Labor Relations Board v. Santa Cruz Fruit Packing Company, 9 Cir., 91 F.2d 790, are analogous to the facts in this case. The court there held that the jurisdiction of the Board did not extend to a branch plant of a corporation engaged solely in intrastate operations, although the corporation was otherwise engaged in interstate business.

Such cases as Virginia Electric and Power Company v. National Labor Relations Board, 4 Cir., 115 F.2d 414, and National Labor Relations Board v. Weyerhaeuser Timber Company, 9 Cir., 132 F.2d 234, 235, are distinguishable upon the facts. In both of these cases it appears from the opinion that the unit under consideration was treated as a department of the corporation engaged in interstate commerce. It was accordingly held that the unit under consideration was an integrated part of a general operation and that disturbance therein would affect commerce.

There is nothing in the record or in the stipulated facts which would warrant a finding that a labor disturbance in the Pauls Valley plant would have an impact upon the operations at the Shawnee plant, or that

1.  United States v. Wrightwood Dairy Co., 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726; Wickard, Secretary of Agriculture, v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122; Pueblo Gas & Fuel Co. v. N. L. R. B., 10 Cir., 118 F.2d 304; Southern Colorado Power Company v. N. L. R. B., 10 Cir., 111 F.2d 539.

2.  To the same effect, see Schechter Poultry Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L. R. 947; Minnesota Rate Cases (Simpson v. Shepard), 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R.A.,N.S., 1151, Ann.Cas.1916A, 18.

60

the discontinuance of operations at Pauls Valley would cast an undue burden upon the operations of the plant at Shawnee.

The conclusions reached as to the Board's jurisdiction make unnecessary a consideration of the other issues presented.

The application of the Board for enforcement of its order of April 19, 1949, is, therefore, denied.