No. 43,752

CONTINENTAL SLIP FORM BUILDERS, INC., *Appellee*, v. BROTHERHOOD OF CONSTRUCTION & GENERAL LABOR, LOCAL 1290, A. F. of L., C. I. O., an Unicorporated Association; JOSEPH RIDER, JAMES W. EVERHART and JOHN DOE, Individually and As Members of the Above Union and As Representatives of the Whole of Persons Constituting the Membership of the Said Union, *Appellants*.

(393 P. 2d 1004)

Opinion filed July 14, 1964.

*James H. Barnes*, of Kansas City, argued the cause, and *Emil C. Anderson*, of Kansas City, was with him on the briefs for the appellants.

*Hugh H. Kreamer*, of Olathe, argued the cause, and *James A. Wheeler*, of Olathe, was with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This an appeal from the trial court's judgment of May 29, 1963, granting a permanent injunction against defendants and all members of the unions and locals in the class represented by defendants, or any of them, from doing any act, directly or indirectly, individually or in concert, which would interfere with plaintiff's business operations at the Johnson County Co-op Grain Storage Elevator at Edgerton, Kansas, and from the further order of the court on July 15, 1963, overruling defendants' motion for new trial.

On March 25, 1963, plaintiff, a Kansas corporation which had been engaged in construction since its organization on December 26, 1962, was under contract and had begun construction of the $137,000 above-mentioned Johnson County Grange Co-op Grain Elevator, at which time plaintiff was also constructing an elevator at Miami, Missouri, at a contract price of $140,000 to $150,000, making the total gross contract price for the two projects from $277,000 to $287,000. A $19,800 steel frame, sheet iron building was being constructed as a part of the elevator on the Edgerton, Kansas, project including approximately $7,000 worth of elevator reinforcing steel already on hand from outside the state of Kansas. Other items consisting of lumber $6,000, machinery $25,000, and ready-mixed concrete $22,000, were purchased in Kansas. Not more than $108,000 worth of labor was to be used on the job.

On March 26, 1963, defendants placed a picket on or near the Edgerton elevator construction site. He carried a banner reading,

"Continental Slip Form Builders, Inc., does not pay the prevailing union wage scale for this area. Construction and General Laborers Union Local 1290, A. F. of L.-C. I. O."

Related effects of the picketing were interference with the truck deliveries of concrete by the Olathe Ready-Mix Concrete Company (doing a gross annual business of $700,000 to $800,000) and interference with completion of the grain elevator, the manager of which testified an annual business of from $300,000 to $500,000 was anticipated, all of which might go into interstate commerce.

Plaintiff paid laborers $1.25 per hour while defendants' scale in the area called for $2.855 per hour, plus ten cents an hour paid into a health and welfare fund. Although one of defendants' representatives stated he hoped they could organize plaintiff and its employees by the use of the banner, defendants claimed the picketing was only to give publicity to plaintiff's wage scale and that no direct attempt was made to organize its employees.

Plaintiff's evidence was the truck drivers of Olathe Ready-Mix Concrete stopped at the picket line because their general practice was not to cross a picket line.

On May 15, 1963, the trial court found it had jurisdiction of defendants; that plaintiff's business was local in character and the National Labor Relations Board would not assume jurisdiction; that on May 25, 1963, there was no dispute between plaintiff and its employees, nor had there been in the past, and plaintiff had

no bargaining or contract relationship with any of the defendants; the effect of the picketing placed on or about the construction site by defendants was to stop concrete deliveries, whereby work ceased, and such interference and hindrance delayed construction; the picketing violated the law because it was designed to coerce and compel plaintiff to recognize defendants as the exclusive bargaining agent for its employees when defendants did not represent any of such employees.

A $1,000 bond was required of plaintiff and, as previously stated, defendants were temporarily restrained and enjoined from doing any act directly or indirectly, individually or in concert, which would interfere with plaintiff's elevator construction at Edgerton.

On May 22, 1963, the trial court set May 27, 1963, as the posting date for the bond, which was done, and on May 29, 1963, a permanent injunction was issued.

On July 15, 1963, defendants' motions for new trial was overruled. Hence this appeal.

The first error complained of by defendants is that the trial court did not have jurisdiction hereof because there was sufficient interstate commerce, the requirement was admitted to be $50,000, to place the original jurisdiction of the case in the National Labor Relations Board.

Although the record discloses evidence that all materials except about $7,000 worth of structural steel came from within the state of Kansas, defendants in their argument in their brief state:

"Assuming the following items were shipped in interstate commerce, lumber $6,600.00, steel rods, $7,000.00, machinery $25,000.00, and steel and iron for the warehouse, estimate $8,000.00, the total of these items is $51,600.00. Double this total to cover the elevator at Miami, Missouri, the total items received in interstate commerce by the employer would be $103,200.00."

We cannot make such an assumption as defendants suggest nor do they direct our attention to any authority justifying such an assumption in order to place jurisdiction in the National Labor Relations Board.

It should be borne in mind that none of plaintiff's employees was a member of this union, that plaintiff had never negotiated with the union or recognized it as the exclusive bargaining agent of its employees, and further, there was no dispute between plaintiff's employees and their employer or between the employer and the union. The banner, above set out in the statement of facts, spoke

the truth, but the trial court's finding, based on our well-reasoned opinion in *Binder v. Local Union No. 685*, 181 Kan. 799, 317 P. 2d 371, was that the picket in this case was illegal. This matter will be discussed further herein but in view of the above, the result was an unlawful use of the banner and the trial court was correct in so holding.

The construction site was the only possible place where defendants could picket plaintiff under G. S. 1961 Supp., 44-809 (13) which makes it unlawful:

"To picket beyond the area of the industry within which a labor dispute arises."

The site was located near Edgerton in Johnson county and the picket had to walk up and down a country gravel road. Plaintiff's original place of business was Hutchinson, Reno county, Kansas, where it engaged in the construction of commercial and residential buildings.

In *Binder v. Local Union No. 685*, supra, the controversy was between nonunion employees of an employer against the union, its officers as individuals and members, etc., and the picketing was there held to be organizational rather than purely informational and, therefore, unlawful under Kansas law. Reliance therein was placed upon the opinion in *Teamsters Union v. Vogt, Inc.*, 354 U. S. 284, 77 S. Ct. 1166, 1 L. ed. 2d 1347, where certiorari was originally denied by the Supreme Court of the United States but was later granted. The opinion of the Supreme Court of the State of Wisconsin (*Vogt, Inc., v. International Brotherhood*, 270 Wis. 315, 71 N. W. 2d 359, [rehearing, 270 Wis. 321a, 74 N. W. 2d 749]) was affirmed by the Supreme Court of the United States in its holding that the picketing therein conducted was also illegal because it was organizational rather than purely informational.

Defendants in this case state there is sufficient similarity in our present case and the Vogt case to cause them concern, and a careful reading of the Vogt case convinces us that it not only should cause defendants concern, but we think it decides each and every question here involved because it makes no difference upon what theory discussion is commenced, the answer ultimately appears in the Vogt case.

Plaintiff's foreman, Walter H. Nichols, testified that after construction had started, the picket appeared and walked up and down the road. The result of the presence of the picket was

that when a truck hauling concrete or supplies came in, it would stop; the only effect of the picket was he kept the trucks from coming onto the building site. Nowhere in the record is there any evidence that any other result was realized from the picketing and, as above stated, the road was a country gravel road exactly the same as the road in the Vogt case.

Arthur J. Martin, operator of the Olathe Ready-Mix Concrete Company, who had the sole contract to furnish concrete for the construction job, testified the sand he used came from Wyandotte county, the rock came from Johnson county, and the cement from Iola, all in Kansas. Martin's employees were union men and he definitely stated, "Our men would not cross a banner, no."

The record shows that once the pouring of concrete begins on a construction job, or a designated section thereof, the pouring must be continuous until the job is completed. Almost simultaneous with the appearance of the picket and the stoppage of the first material trucks, plaintiff commenced this action. It first obtained a restraining order and then a temporary injunction, which required plaintiff to post a $1,000 bond. Later the trial court made the injunction permanent and continued the bond.

The Vogt case, supra, was well analyzed in our Binder case, supra, which at pages 804, 805, set out the applicable Kansas statutes. (G. S. 1949, 44-803; G. S. 1961 Supp., 44-808; G. S. 1961 Supp., 44-809; and G. S. 1949, 44-813.) In the Vogt case, Vogt employed fifteen or twenty men. The union sought successfully to induce some of these employees to join the union and began picketing the entrance to Vogt's gravel pit with signs reading:

"'The men on this job are not 100% affiliated with the A. F. L.'" (Syl.)

The result was the drivers of several trucking companies refused to deliver to or from Vogt's plant causing him substantial damage. The Supreme Court of Wisconsin affirmed the trial court's injunction because the picketing had been engaged in for the purpose of coercing Vogt to force his employees to become members of the union and such picketing was for an unlawful purpose since the Wisconsin statutes made it an unfair labor practice for an employee individually, or in concert with others to:

"'. . . coerce, intimidate or induce an employer to interfere with any of his employes in the enjoyment of their legal rights . . . or to engage in any practice with regard to his employes which would constitute an unfair labor practice if undertaken by him on his own initiative.'" (Syl.)

In our Binder case, supra, plaintiffs were nonunion employees of the prime contractor in the construction of a Fine Arts Building at Marymount College, in Salina, Kansas. Other workmen on the job employed by subcontractors and other prime contractors were all union members but none was a member of or affiliated with the union which placed the picket on the job. We there said, as above stated, that the picket in that case was an organizational picket and was, therefore, illegal.

In our present case the only actual testimony as to the intention and purpose of the picket was that of James W. Everhart, representative for defendants, who had instructed the banner carrier when to begin carrying it and where to carry it. In response to the following questions, Everhart gave the following answers:

"Q. That's all you did? A. Yes.

"Q. But, you hoped by the use of that banner you could organize Continental Slip Form? A. I was hoping they would pay our scale, yes.

"Q. And then you could organize them? A. That's right.

"Q. . . . In other words, you hoped you could get them first up to the scale, and then you could talk about organization; isn't that right? A. That's right."

The foregoing record makes our case stronger than the Vogt case by reason of the fact that some of Vogt's employees were already members of the union and the union's effort was to obtain 100% membership of them while here none of plaintiff's employees was a member of the union that placed the picket on the job. Both cases have a common ground in that the "peaceful" picketing occurred on a country gravel road and involved patrol of a particular locality, but we must also recognize, as the Vogt case did, that ". . . the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated." (p. 289.)

Our conclusion here, following the Supreme Court of the United States in the Vogt case, and our own Binder case, is that under these circumstances the picket was an organizational picket and the trial court did not err in enjoining the picketing of plaintiff's construction site by the orders it issued.

The judgment is affirmed.