No. 44,222

THE READY-MIX CONCRETE COMPANY OF LAWRENCE, KANSAS, a corporation, *Appellant,* v. TRUCK DRIVERS & HELPERS LOCAL UNION No. 696, affiliated with INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, INDEPENDENT, et al., *Appellees.*

(403 P. 2d 191)

June 12, 1965. Opinion filed

*William G. Haynes,* of Topeka, argued the cause, and *O. B. Eidson, Philip H. Lewis, James W. Porter, Charles S. Fisher, Jr., Peter F. Caldwell, Roscoe E. Long, R. Austin Nothern* and *Brock R. Snyder,* all of Topeka, were with him on the briefs for the appellant.

*W. L. Dean Parker, Jr.,* of Topeka, argued the cause, and *George McCullough, Robert Wareheim, Reginald LaBunker* and *James Rose,* all of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This was an action to enjoin the defendants from continuing their ambulatory picketing at plaintiff's customers' locations while plaintiff's trucks were delivering ready-mixed concrete.

The defendants, Truck Drivers & Helpers Union Local No. 696, commenced following plaintiff's ready-mixed trucks to customer locations in July of 1962, and while patrolling back and forth in front of these locations displayed to the public and to plaintiff's customers a sign publicizing that plaintiff refused to negotiate or bargain with the union.

An individual stationed himself in an automobile outside plaintiff's ready-mix plant in Lawrence, Kansas at about 7:30 or 8:00 A. M. each morning and as plaintiff's ready-mix trucks left the plant the individual followed them to various job sites. As soon as the trucks arrived at the job site the individual got out of his automible with a banner and proceeded to walk in front of the project. After December 24, 1963, the legend on the banner was changed to read:

"Read-Mix Concrete Company of Lawrence, Kansas, Inc., commonly known as Penny Ready-Mix, is not paying the prevailing wage scale of Truck Drivers & Helpers Local 696, 903 Western, Topeka, Kansas."

As a result of the picketing plaintiff's contracts were terminated by many of its regular customers and its bids were refused.

The trial court concluded:

"From the facts the basic question is whether or not this Court has jurisdiction and the answer must be that it does not for the following reasons:

"(1) As recently as March 5, 1964, plaintiff submitted this labor dispute to the Board, alleging that the matter was an unfair labor practice affecting commerce within the meaning of the Act. The Board assumed jurisdiction and after investigation declined to issue a complaint. In the face of this it is difficult to see how plaintiff can now contend that it is not engaged in commerce within the meaning of the Act.

"(2) The decision of the Board in refusing to issue a complaint on the three petitions filed by plaintiff on the ground that investigation did not disclose facts sufficient to warrant a finding that the conduct complained about was prohibited by Sec. 8 of the Act does not amount to a finding that such conduct was not arguably protected by Sec. 7 of the Act. As a matter of fact, plaintiff's filing of the charges tends to support the premise that the conduct complained about is either arguably protected or prohibited by the Act and that therefore the state court is preempted. (Hyde Park Dairies v. Local Union No. 795, 182 K. 440.)

"(3) Even though plaintiff's submission to the Board's jurisdiction (as was done by filing the petitions mentioned herein) may not be determinative of the question of the Board's assuming jurisdiction of the subject of this action, still in cases involving secondary activity by a union where the primary employer's operations do not meet the Board's standards, 'the Board will take into consideration, for jurisdictional purposes not only the operations of the primary employer, but also the operations of the secondary employers at the location effected by the alleged conduct involved.' (Jemcon Broadcasting Co., 135 NLRB No. 48; 49 LRRM 1492) And if the activities are of such a nature that the Board will assume jurisdiction, then the state court is preempted. (Liner v. Jefco, Inc., (1964) 375 U. S. 301, 55 LRRM 2048; and Siemons Mailing Service (1958) 122 NLRB 13).

"From the foregoing it is clear that this Court is without jurisdiction and that judgment should be entered for the defendant for costs.

"The Clerk is hereby directed to enter such judgment.

"Signed and dated at Lawrence, Kansas on July 29, 1964."

The plaintiff has appealed from the judgment denying the injunction.

The first question for determination is whether Congress has pre-empted jurisdiction over the activity involved by placing exclusive jurisdiction in the National Labor Relations Board.

The appellant contends that its business does not fall within the Board's self-imposed interstate commerce jurisdictional requirements for non-retail establishments. The appellant suggests that during the twelve months preceding the trial of the case its out of state purchases were only $32,274.53 while the Board has fixed $50,000.00 as its proposed non-retail jurisdictional standard.

We do not believe it necessary to become involved in a discussion of dollar volume or whether the Board will consider all commerce involved for jurisdictional purposes where the labor dispute affects secondary employers. (*Jemcon Broadcasting Co.*, 135 N. L. R. B. No. 48.) It is not disputed that the Board had assumed jurisdiction over appellant's labor disputes in the past. We do not believe the Board will surrender jurisdiction because during one annual period the employer's out of state business fell below $50,-000.00, particularly where the evidence is to the effect that the employer's business during such period was materially reduced because of a dispute with labor.

The record also discloses that during the year 1962, and again in 1963, the appellant submitted this labor dispute to the National Labor Relations Board alleging:

"The above named organization [appellee] or its agents has engaged in and is engaging in unfair labor practices within the meaning . . . of the National Labor Relations Act, and these unfair labor practices are unfair labor practices affecting commerce within the meaning of the act."

The appellant having requested the Board to take jurisdiction is not now in position to deny the Board's jurisdiction. In *Stieben v. Local Union No. 685*, 181 Kan. 832, 317 P. 2d 436, we stated beginning on page 837:

"Under all of the facts and circumstances presented by the record in the instant case, plaintiffs' evidence, disclosing application of the National Labor Relations Board charging unfair labor practices prohibited by the Labor Management Relations Act, 1947, in connection with the picketing out of which this action arose, must be construed as an *admission* that Jarvis' construction projects at the Smoky Hill Air Force Base affected interstate commerce."

What has been said applies with equal force to appellant's contention that the practice complained of is not arguably protected by

section 7 of the Act nor arguably prohibited by section 8, and is therefore open to state regulation.

The United States Supreme Court set forth the following mandate in *San Diego Unions v. Garmon*, 359 U. S. 236, 245, 79 S. Ct. 773, 3 L. Ed. 2d 775, on the question of pre-emption and exclusive jurisdiction of the N. L. R. B.:

". . . when an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

"To require the States to yield to the primary jurisdiction of the National Board does not ensure board adjudication of the status of the disputed activity. If the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end and the states are ousted of all jurisdiction. Or, the Board may decide that an activity is neither protected nor prohibited and thereby raise the question whether such activity may be regulated by the states. . . ."

The appellant recognizes the mandate as expressed by the supreme court but contends:

"To comply with this mandate the employer herein filed three unfair labor practice charges with the N. L. R. B. complaining that the conduct i. e. 'stranger blackmail ambulatory picketing' engaged in by the Union, that is the subject of this action, constituted a violation of the secondary boycott or organizational and recognitional prohibitions of Section 8 of the Act. Each of these charges were investigated and it was determined by the N. L. R. B. in conformity with its present interpretation of the Act the conduct complained of was not conduct that come within the Act's prohibitions.

. . . . . . . . . . . . . . .

"The N. L. R. B.'s policy as set forth in the Regional Director's dismissal of the secondary boycott unfair labor practice charge and the General Counsel's letter sustaining the dismissal is enunciated in the decision cited in those letters."

The appellants have misconstrued the ruling of the Board. The Board did not dismiss the complaints for lack of jurisdiction, rather it took jurisdiction and refused to grant relief because of insufficient evidence of any violation. The regional director in denying relief stated:

"The investigation discloses that in the course of ambulatory picketing of trucks belonging to Ready Mix Concrete Company of Lawrence, Kansas, the Union picketed at construction sites where secondary employers' employees were engaged in work. This common situs picketing, however, was reasonably limited to times when Ready Mix's trucks were at the construction sites and no evidence of illegal inducement of secondary employers' employees was found. The only evidence of threats, coercion or restraint of secondary employers was found in the announcement made by a Union representative that the Union was 'going to picket' Ready Mix.

"On the basis of the investigation, including the facts set forth above, it appears that there is insufficient evidence of a violation and that further proceedings are not warranted at this time. I am, therefore, refusing to issue a Complaint in this matter."

On appeal the Board stated:

"This office sustains the ruling of the Regional Director. It was concluded that as the picketing at the secondary situs was limited to times when the employees of Ready Mix were on the premises, the picket signs clearly disclosed that the dispute was with Ready Mix, picketing was conducted reasonably close to the location of the situs, the burden of establishing that the Union's conduct was in violation of Section 8 (b) (4) (B) could not be sustained. Accordingly, further proceedings were deemed unwarranted. See *Moore Drydock*, 92 NLRB 547; *Wyckoff Plumbing*, 135 NLRB No. 49; *Houston Armored Car Co.*, 136 NLRB No. 9."

If the appellant seriously believed that the Board would decline jurisdiction it could have asked the Board for an advisory opinion rather than requesting it to exercise jurisdiction and grant relief. (National Labor Relations Board Rules and Regulations, Series 8, 102.98.)

Section 2 (9) of the Act, 29 U. S. C. A. § 152 (9) defines "labor dispute" as follows:

"The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee."

The appellee suggests that the dispute has been going on since 1962, and that the union's activity, consisting of picketing to advise the public that appellant is paying substandard wages, is justified under the above definition of a "labor dispute" because:

". . . though the defendant has no particular interest in improving the wages paid to the plaintiff's employees, it would like for the plaintiff to pay the established rate, for only in that way can the defendant hope to get increases for the employees which it does represent."

". . . the employees of competitors have a legitimate interest in seeing that the plaintiff's wages are increased. One way to achieve this end is to picket, advising the public that such is the situation. Clearly, then, the picketing here is concerted activity for the purpose of the defendants' members' mutual aid and protection."

Whether or not the activity involved does constitute a "labor dispute" and whether the activity is protected under the act may be subject to argument and debate. The very fact that the question is arguable places jurisdiction in the Board rather than the courts.

The appellant suggests that because there is no employee-em-

ployer relationship section 7 does not apply. Under section 2 (3) of the Act: "The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer. . . ."

That the protection of the Act is not limited to employees of a particular employer cannot be seriously disputed. The necessity to protect employee activity which transcends the employer-employee relationship was settled in *A. F. of L. v. Swing*, 312 U. S. 321, 326, 61 S. Ct. 568, 85 L. Ed. 855. In that case the plaintiffs sought to enjoin picketing on grounds that there was no dispute between the employer picketed and his own employees. The issue was whether or not the state could enjoin peaceful picketing where there was no employer-employee relationship. The court said:

". . . A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. . . ."

In *Asphalt Paving v. Local Union*, 181 Kan. 775, 317 P. 2d 349, at page 781, this court listed many of the practices which state courts may enjoin as follows:

"On the other hand, the following cases are authority that state power has not been exclusively absorbed by Taft-Hartley with respect to conduct affecting interstate commerce, and that state courts may enjoin mass picketing, threatening employees, obstructing streets and highways, picketing homes, blocking the entrance to or egress from a factory, coercing employees who wish to refrain from striking, interfering with other approaching an area where a strike is in progress, recurrent unannounced work stoppages, enforcement of a maintenance-of-membership clause in union security agreements, and they may award damages for a common law tort based on violent conduct and enforce criminal statutes against conduct violative of them (*Allen-Bradley Local v. Board*, 315 U. S. 740, 86 L. Ed. 1154, 62 S. Ct. 820; *Auto Workers v. Wis. Board*, 336 U. S. 245, 93 L. Ed. 651, 69 S. Ct. 516; *United Workers v. Laburnum Corp.*, 347 U. S. 656, 98 L. Ed. 1025, 74 S. Ct. 833; *Auto Workers v. Wisconsin Board*, 351 U. S. 266, 100 L. Ed. 1162, 76 S. Ct. 794; *Algoma Plywood Co. v. Wis. Board*, 336 U. S. 301, 93 L. Ed. 691, 68 S. Ct. 584). The record here does not disclose conduct of the character to permit application of the rule announced by these authorities."

These activities do not partake of the nature of the activity now being considered.

Appellants call our attention to *Binder v. Local Union No. 685*, 181 Kan. 799, 317 P. 2d 371. The case is of no assistance in the determination of the specific question before us. It was specifically found in the Binder case that there was no evidence that interstate commerce was affected.

Appellant relies on *Teamsters Union v. Vogt, Inc.*, 354 U. S. 284, 77 S. Ct. 1166, 1 L. Ed. 2d 1347; *Binder v. Local Union No. 685*, 181 Kan. 799, 317 P. 2d 371 and *Continental Slip Form Builders v. Labor Local*, 193 Kan. 459, 393 P. 2d 1004 and argues that the picketing should be enjoined. The appellant's facts do not bring the present case within those decisions.

In the Vogt case the Supreme Court of the United States held that picketing which was for organizational purposes was not protected by the First and Fourteenth Amendments of the Constitution, hence the state might find such to be against public policy and grant relief accordingly. Following the Vogt case, this court in the Binder case held that organizational picketing contravenes this state's public policy and may be enjoined. This was followed in the Continental Slip form case which is presently before this court on rehearing. In both the Binder and Continental Slip Form cases there were factual findings that the picketing was for the object of organizing the employer's employees. Here there was no evidence which even inferentially supports the contention that the defendant has an organizational aim. On the other hand, the defendant's business agent testified without contradiction that the purpose of the picketing was to equalize wage rates so that the defendant can obtain better benefits for those employees whom it does represent.

We are forced to conclude that the state courts are without jurisdiction over the controversy.

The appellant last contends that the trial court erred in sustaining objections to certain testimony as hearsay; in sustaining motions to quash the subpoenas *duces tecum* for the production of documents, and in allowing testimony of the contents of collective bargaining agreements contrary to the best evidence rule.

The matters to which the objections are addressed might be of material importance if jurisdiction were established and the question of granting an injunction was before the court. However, they were not necessary nor material to the determination of the question of jurisdiction. The ruling could not therefore be prejudicial.

This court will not consider questions not material to the determination of the controlling issue. (*Watkins v. City of El Dorado*, 183 Kan. 363, 327 P. 2d 877; *Rodriguez v. Cascade Laundry Co.*, 185 Kan. 766, 347 P. 2d 455.)

The judgment is affirmed.

APPROVED BY THE COURT.