No. 43,752

CONTINENTAL SLIP FORM BUILDERS, INC., *Appellee*, v. BROTHERHOOD OF CONSTRUCTION & GENERAL LABOR, LOCAL 1290, A. F. of L.-C. I. O., an Unincorporated Association; JOSEPH RIDER, JAMES W. EVERHART and JOHN DOE, Individually and as Members of the Above Union and as Representatives of the Whole of Persons Constituting the Membership of the Said Union, *Appellants*.

(408 P. 2d 620)

Opinion on rehearing filed December 11, 1965. (For original opinion of affirmance see *Continental Slip Form Builders v. Labor Local*, 193 Kan. 459, 393 P. 2d 1004.)

*James H. Barnes*, of Kansas City, argued the cause, and *Emil C. Anderson*, of Kansas City, was with him on the brief for the appellants.

*James A. Wheeler*, of Olathe, argued the cause, and *Hugh H. Kreamer*, of Olathe, was with him on the brief for the appellee.

*George E. McCullogh*, *W. L. Parker, Jr.*, *Robert B. Warheim*, *Reginald LaBunker*, and *James L. Rose*, all of Topeka, were on the brief *amicus curiae* for the Kansas State Federation of Labor, AFL-CIO.

The opinion of the court was delivered by

HARMAN, C.: The original opinion in this case (*Continental Slip Form Builders v. Labor Local*, 193 Kan. 459, 393 P. 2d 1004) affirmed the trial court's orders enjoining stranger picketing in violation of G. S. 1961 Supp. 44-809 and 44-809a. Rehearing has been granted as to the question of jurisdiction of that court and the case has been reargued. A complete factual account appears in the original opinion and restatement will be made only to the extent necessary to consider the jurisdictional question.

It is now well settled that Congress, in the exercise of its constitutional authority to regulate interstate commerce, has preempted the field in labor relations matters affecting interstate commerce and has vested the National Labor Relations Board (hereinafter referred to as the board) with exclusive power to adjudicate those labor practices which are either protected or prohibited by the Labor Management Relations Act of 1947 as amended (hereinafter referred to as the act). (*Garner v. Teamsters Union*, 346 U. S. 485, 98 L. ed. 228, 74 S. Ct. 161; *Guss v. Utah Labor Board*, 353 U. S. 1, 1 L. ed. 2d 601, 77 S. Ct. 598; *Binder v. Local Union No.*

685, 181 Kan. 799, 317 P. 2d 371; *Asphalt Paving v. Local Union,* 181 Kan. 775, 317 P. 2d 349.)

Although it is true that where the questionable labor conduct regulated by state law is also an unfair labor practice under federal law the doctrine of preemption excludes state action, state courts need not presume jurisdiction is preempted merely because the question is raised by a party to the dispute. In order for there to be a preemption of state court jurisdiction, it is necessary that it be shown (1) that the employer is engaged in interstate commerce or that his business operations substantially affect interstate commerce and (2) that the challenged activities expressly or arguably constitute either a protected activity or an unfair labor practice under the act. (*Plumbers' Union v. Borden,* 373 U. S. 690, 10 L. ed. 2d 638; 83 S. Ct. 1423; *San Diego Unions v. Garmon,* 359 U. S. 236, 3 L. ed. 2d 775, 79 S. Ct. 773.)

It should be noted that the act is not restricted in its scope and application to employers actually engaged in interstate commerce. Any employer whose business operations "affect commerce" comes within its scope. This term is defined in section 2 (7) as follows:

"The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." (29 U. S. C. A. § 152 [7].)

Under the "affecting commerce" criterion the board often asserts jurisdiction over businesses which would normally be considered as local in nature such as mining, manufacturing and construction work on the theory that work stoppages in them would necessarily affect the flow of interstate commerce where those businesses either buy goods from other states or furnish goods or services to other states (see annotation at 16 A. L. R. 2d 775).

This court has previously held that whether an alleged unfair labor practice affects interstate commerce is a question of fact upon which jurisdiction rests. Whenever an action involving a labor dispute is commenced in a state court and the court's jurisdiction is challenged, that court is empowered to determine whether it has jurisdiction based upon the jurisdictional facts presented to it. (*Binder v. Local Union No. 685,* supra; *Asphalt Paving v. Local Union,* supra.)

For budgetary and other reasons the board has never been willing to exercise jurisdiction over all labor disputes affecting interstate

commerce under the authority delegated to it by Congress, but has limited its jurisdiction to enterprises whose operations have, or at which labor disputes would have, a pronounced impact upon the flow of interstate commerce, and to this end it has at various times established certain minimal dollar value jurisdictional standards.

The board's policy of refusing to exercise jurisdiction over all labor disputes was confirmed by Congress with the amendment of the act by the Labor-Management Reporting and Disclosure Act of 1959, which provides:

"The Board, in its discretion, may, by rule of decision or by published rules . . . decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction. . . ." (29 U. S. C. A. § 164 [c] [1].)

And state courts may now assume jurisdiction over cases which the board declines pursuant to the foregoing (29 U. S. C. A. § 164 [c] [2]). The board's discretion is limited, however, in that it may not decline jurisdiction over any case which would have been accepted under the standards prevailing on August 1, 1959. (29 U. S. C. A. § 164 [c] [1].)

Those standards prevailing on August 1, 1959, for a nonretail enterprise such as the employer involved in the instant case are outlined in *Siemons Mailing Service*, 122 NLRB 81, at page 85 as follows:

"For the Board has concluded that it will best effectuate the policies of the Act if jurisdiction is asserted over all nonretail enterprises which have an *outflow or inflow across State lines of at least $50,000, whether such outflow or inflow be regarded as direct or indirect.* For the purposes of applying this standard, *direct outflow* refers to goods shipped or services furnished by the employer outside the State. *Indirect outflow* refers to sale of goods or services to users meeting any of the Board's jurisdictional standards except the indirect outflow or indirect inflow standard. *Direct inflow* refers to goods or services furnished directly to the employer from outside the State in which the employer is located. *Indirect inflow* refers to the purchase of goods or services which originated outside the employer's State but which he purchased from a seller within the State who received such goods or services from outside the State. In applying this standard, the Board will adhere to its past practice of adding direct and indirect outflow, or direct and indirect inflow. It will *not* add outflow and inflow."

It has been the board's established policy, continued under its present jurisdictional standards, to apply the concept that it is the impact on commerce of the totality of an employer's operations that should determine whether or not the board will assert jurisdiction.

(*Appliance Supply Company*, 127 NLRB 319, 320; *Siemons Mailing Service*, supra.) More specifically, the board has on numerous occasions stated that in the construction industry it determines whether to assume jurisdiction over a case on the basis of the over-all operations of an employer rather than on the basis of a particular project. (*Paul W. Speer, Inc.*, 94 NLRB 317; *Miller Electric Company*, 101 NLRB 1014; *Acme Equipment Company*, 102 NLRB 153.) In *Paul W. Speer, Inc.*, supra, the board said:

"The Respondents contend that the Board should dismiss the complaint because the alleged unfair labor practices occurred in connection with a purely local construction job, which, by itself, has no effect on interstate commerce. We find no merit to this contention, as we believe that in the construction industry, as in others, the Board should determine jurisdiction based on the over-all operations of the employer." (p. 318.)

Upon the first hearing of this case emphasis was placed only upon a single factual element involved in jurisdictional standards, namely, that of direct inflow wherein it was shown that structural steel costing $7,000.00 was purchased outside the state of Kansas and this was considered insufficient. The record does disclose that appellee between December 26, 1962, and March 25, 1963, functioned as a general contractor in building the grain elevator at Edgerton, Johnson County, Kansas, where the alleged unfair labor practice occurred, and at the same time was so functioning in the building of another grain elevator at Miami, Missouri, at a contract price of $140,000 to $150,000. On this facet of jurisdiction it seems clear that the board, upon timely application, would have been required to assert jurisdiction over appellee on the basis of its direct outflow test, assuming that a labor dispute existed. Cases in which the board has asserted jurisdiction over contractors who performed more than $50,000.00 out of state services include *Local 148*, 114 NLRB 1494; *K. M. & M. Construction Co.*, 120 NLRB 1062; *Local 173, Wood, Wire and Metal Lathers' Etc.*, 121 NLRB 1094; *Local 176, United Brotherhood of Carpenters, Etc.*, 122 NLRB 980; *Ernest Renda Contracting Co., Inc., Etc.*, 130 NLRB 1515; *Plumbers & Pipe Fitters Local Union 214, Etc.*, 131 NLRB 942; *Los Angeles Bldg. & Construction Trades Council*, 140 NLRB 1249.

In view of the fact that the controversy involved only peaceful picketing, and having determined that appellee's business operations met the commerce jurisdictional requirements of the board, the remaining question is whether the controversy was one which involved an unfair labor practice or protected activity under the act.

The picketing in the case at bar was not by an employee of the appellee but was by what is generally referred to as a stranger picket. This particular type of picketing does not defeat the jurisdiction of the board in an otherwise preempted case under the act. (*Hyde Park Dairies v. Local Union No. 795*, 182 Kan. 440, 446, 321 P. 2d 564; *Texas Const. Co. v. H. & P. E. Local Union No. 101*, 178 Kan. 422, 286 P. 2d 160; *Kaw Paving Co. v. International Union of Operating Engineers*, 178 Kan. 467, 290 P. 2d 110.) Furthermore, the fact there was no labor dispute between the appellee and its employees does not defeat the board's jurisdiction under the provisions of 29 U. S. C. A. § 152 (9) which defines the term "labor dispute" as including:

". . . any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether the disputants stand in the proximate relation of employer and employee.*" (Emphasis supplied.)

This court in *Ready-Mix Concrete Co. v. Truck Drivers & Helpers Local Union*, 195 Kan. 154, 403 P. 2d 191, followed the rule laid down by the Supreme Court of the United States in *San Diego Unions v. Garmon*, 359 U. S. 236, 3 L. ed. 2d 775, 79 S. Ct. 773, that a state court may not enjoin peaceful picketing which is either arguably protected or prohibited under the act, quoting therefrom as follows:

"'. . . when an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.'" (p. 157.)

From the foregoing it is obvious that state courts must relinquish jurisdiction not only over those controversies actually found to be within the jurisdiction of the board, but also over controversies arising from activities arguably subject to the board's cognizance.

State courts need only determine whether the facts reasonably bring the controversy within sections 7 and 8 (29 U. S. C. A. §§ 157, 158), and if so, should decline jurisdiction. (*Weber v. Anheuser-Busch, Inc.*, 348 U. S. 468, 99 L. ed. 546, 75 S. Ct. 480; *Hyde Park Dairies v. Local Union No. 795*, 182 Kan. 440, 321 P. 2d 564.) In *Weber v. Anheuser-Busch*, supra, it was said:

". . . where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act,

'may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance." (p. 481.)

Therefore, unless we are able to say that the picketing in the case at bar was not within the board's power to protect or prevent, we must acknowledge the board's primary power to deal with it, appellants having interposed a timely demand that the district court recognize the case as one primarily within the board's jurisdiction. Our duty is no less compelling because the board might have determined that the picketing was neither protected nor prohibited under the act.

Appellee plainly states in its brief that it charged appellants with an unfair labor practice under section 8 of the act. The district court found that appellants' picketing was:

". . . designed to coerce and compel plaintiff to recognize the defendants as the exclusive bargaining agent of their employees when the defendant unions did not represent any of plaintiff's employees."

While the coercion which appellee charged and proved may have constituted, *inter alia*, a violation of state law, it may also have violated the act inasmuch as picketing of a type commonly referred to as recognitional picketing is made an unfair labor practice by section 8 (b) (7) which provides:

"(b) It shall be an unfair labor practice for a labor organization or its agents . . .

"(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative. . . ." (29 U. S. C. A. § 158 [b] [7].)

In *Construction Laborers v. Curry*, 371 U. S. 542, 9 L. ed. 2d 514, 83 St. Ct. 531, respondents, partners in a contracting business in Atlanta, failed in an attempt to obtain a temporary injunction from a state court for the purpose of restraining picketing at a construction site. Petitioner maintained that the picketing was for the sole purpose of publicizing the facts about respondents' low wage scales and that its activities were within the exclusive jurisdiction of the board. The banner carried by the picket was essentially the same as the banner in the instant case, being what is sometimes called a sub-

standard wage banner. The Georgia Supreme Court reversed the lower state court on the ground that the record showed the purpose of the picketing was to force respondents to employ only union labor, which was a violation of Georgia's right-to-work law. The Supreme Court in reversing the Georgia Court held:

"The allegations of the complaint, as well as the findings of the Georgia Supreme Court, made out at least an arguable violation of § 8 (b) of the National Labor Relations Act, 29 U. S. C. § 158 (b). Consequently, the state court had no jurisdiction to issue an injunction or to adjudicate this controversy, which lay within the exclusive powers of the National Labor Relations Board. . . . Nor is the jurisdiction of the Georgia courts sustainable, as respondents urge, by reason of the Georgia right-to-work law. . . ." (pp. 546, 547.)

See, also, *Liner v. Jafco, Inc.,* 375 U. S. 301, 11 L. Ed. 2d 347, 84 S. Ct. 391.

We hold that the appellants' activities as depicted by the record were such that they were arguably within the provisions of the act, and consequently that until jurisdiction had affirmatively been declined by the board, jurisdiction of the Johnson County District Court was preempted to the extent that the exclusive power to adjudicate the matter was in the board. In view of our holding it is unnecessary to discuss the other points raised by counsel for appellants and *amicus curiae* in their briefs.

Having concluded the district court was without jurisdiction, the original opinion of affirmance is set aside and the judgment is reversed.

APPROVED BY THE COURT.