Gene HENDERSON, doing business as
Henderson Plumbing & Heating
Company, Respondent,

v.

PLUMBERS LOCAL NO. 8, OF the AMER-
ICAN FEDERATION OF LABOR,
et al., Appellants.

No. 55543.

Supreme Court of Missouri,
Division No. 1.

May 10, 1971.

Motion for Rehearing or to Transfer to Court
En Banc Denied June 14, 1971.
Certiorari Denied Nov. 9, 1971.
See 92 S.Ct. 276.

John B. Ewing, Jr., Richard A. Erickson,
Charles V. Garnett, Kansas City, for re-
spondent.

Robert S. Fousek, John J. Manning,
Kansas City, for appellants.

WELBORN, Commissioner.

Action by plumbing contractor to enjoin
picketing by labor organization and for
damages resulting from such picketing.
Trial court issued injunction and gave
plaintiff judgment for $43,172 actual and
$500 punitive damages. Defendants appeal.

Plaintiff-respondent, Gene Henderson, is
a plumbing contractor in the Kansas City
area. At the times here significant, he
was a member of the United Contractors
Council, an association of contractors.
The United Contractors Council had a
collective bargaining agreement with Dis-
trict 50 of the United Mine Workers of
America. Their agreement provided wages
and working conditions for employees of
contractor members of the council. Anoth-
er contractors' organization, the Associated

Plumbing Contractors of Kansas City, had a contract covering wages and conditions of employment of their employees with Local Union No. 8 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, one of the defendants-appellants.

While these contracts were in effect, officers of Local No. 8 caused pickets to be placed on jobs where Henderson's employees were working. These pickets, whose activity began on October 22, 1963, carried signs which read as follows:

"NOTICE TO THE PUBLIC

This notice is addressed only to the general public and not to any employee or employer. The employees of

HENDERSON PLUMBING COMPANY

who are performing plumbing work on this job do not receive all of the benefits, such as pensions, health and welfare plans, and other advantages which have been established in this area by Plumbers Local No. 8, A.F.L.–C.I.O. We are not asking for recognition, nor do we desire to represent *their employees,* and we have no dispute with any other *employer.*"

Whenever these pickets appeared at a job site, employees of other employers on the job refused to cross the picket lines. The appellants do not here dispute that Henderson lost business as a result. No question as to the amount of loss and damages is here involved.

On October 25, 1963, Henderson, on behalf of United Contractors Council, filed a complaint with the National Labor Relations Board charging Local No. 8 with an unfair labor practice in violation of § 8(b) subsection (7) (A) and (C) of the National Labor Relations Act. The complaint was investigated and considered by the Board. On October 31, 1963, the Regional Director advised the Contractors Council that after such investigation: "It does not appear that further proceedings on the charge are warranted because there is insufficient evidence that the Charged Party's picketing is for an object proscribed by Section 8(b) (7) of the Act."

Subsequently, District 50, United Mine Workers, filed complaints with the National Labor Relations Board, charging Local No. 8 with violation of § 8(b) subsection (4) (ii) (A) and (B) of the National Labor Relations Act, in that by picketing and other means Local No. 8 attempted to coerce builders to cease doing business with Henderson. On July 8, 1964, the Regional Director of the National Labor Relations Board notified District 50 that, as a result of its investigation of the charges, " * * * it appears that further proceedings are not warranted at this time." The conclusion was based upon inadequacy of evidence to show that the activities of Local No. 8 were violative of the provisions of the National Labor Relations Act relied upon by the complainant.

On June 4, 1964, Henderson filed the petition which provided the basis of the judgment here under review. The petition named Local No. 8 and its members as parties defendant. It charged that the picketing by defendants of places where plaintiff was working was for no lawful purpose and was in furtherance of a conspiracy among the defendants to injure, destroy and otherwise interfere with plaintiff's business. The petition charged that the picketing was unlawful and malicious. It sought damages and an injunction against the allegedly unlawful picketing. A temporary restraining order against the picketing was issued.

Defendants moved to dismiss plaintiff's petition and to dissolve the restraining order on the grounds that the activities of defendants of which the petition complained were either unfair labor practices under § 8(b) of the National Labor Relations Act or protected concerted activity under § 7 of the Act and that, therefore, the court had no jurisdiction of the com-

plaint because of the exclusive primary jurisdiction of the National Labor Relations Board of matters arising under the National Labor Relations Act.

A hearing was held on plaintiff's application for a temporary injunction. At the conclusion of the hearing, the trial court found that plaintiff was not engaged in interstate commerce within the meaning of the National Labor Relations Act, that the acts of defendants complained of do not give rise to a labor dispute within the meaning of said Act, and that, therefore, the court had jurisdiction of the cause. A temporary injunction issued.

Upon a final hearing, the court reiterated its jurisdictional finding, found that the picketing by defendants was "unlawful and in violation of the rights of plaintiff" and constituted "a malicious interference with plaintiff's business." Actual damages to plaintiff in the amount of $43,172 were found and punitive damages of $500 awarded because the acts complained of constituted "a willful and malicious interference with plaintiff's business * * *." The temporary injunction was made permanent. After the motion for new trial had been overruled, defendants appealed.

■ On this appeal, appellants renew the jurisdictional objections which the trial court overruled. They first challenge the trial court's finding that respondent was not engaged in commerce so as to provide basis for application of the National Labor Relations Act. The evidence showed that Henderson was licensed to do plumbing business in both Missouri and Kansas and, although 98% of his operations were in Missouri, he did four to five thousand dollars worth of business in Kansas in 1963. Henderson also testified that the "great part" of the some $147,000 worth of materials that he purchased in 1963 was manufactured outside the State of Missouri. This evidence would provide basis for a finding in proceedings under the National Labor Relations Act that Henderson was engaged in commerce within the meaning

of that Act. National Labor Relations Board v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284. Furthermore, Henderson was a member of an employers' association which was a party to collective bargaining contracts covering employees of all members of the association. Therefore, the operations of the entire association could be viewed in determining whether or not the particular matters affected commerce. The National Labor Relations Board took such an approach in 1960 in a proceeding involving Local No. 8 and the United Contractors Council and another employer member of the council. Admittedly, the record here includes no attempt to show the extent of the council's business in 1963. However, the fact that the Board had previously found jurisdiction on such basis is of evidentiary value in considering whether the trial court's finding on this issue was erroneous. Also to be considered was the Board's acceptance of the complaint involving the picketing here in question. The Board made no express finding on the jurisdictional issue. However, its dismissal of the complaint was based upon its lack of merit under the National Labor Relations Act, not the fact that interstate commerce was not involved.

In view of the Denver Building & Construction Trades Council case, supra, the finding of the trial court that the matters before it did not involve interstate commerce is contrary to the evidence before the trial court. Inapplicability of the pre-emption doctrine may not rest on such basis.

The authorities cited by respondent on this issue are not convincing. None involves a direct holding under applicable federal law that respondent's operation does not affect commerce within the meaning of the National Labor Relations Act. In view of the Denver Building & Construction Trades Council case, abstract discussion of the difference between interstate and intrastate commerce found in cases such as Southern Colorado Power Co.

v. National Labor Relations Board, 10th Cir., 111 F.2d 539, and Pueblo Gas & Fuel Co. v. National Labor Relations Board, 10th Cir., 118 F.2d 304, is not here controlling. In both of those cases, the employer was found to have been in business affecting commerce. Only in National Labor Relations Board v. Shawnee Milling Co., 10th Cir., 184 F.2d 57, of the cases cited by respondent, was the Board found to have lacked jurisdiction because of the absence of activity affecting commerce. There the employer operated a mill which processed only locally grown crops for exclusively local consumption. In the cases of Heath v. Motion Picture Machine Operators Union No. 170, 365 Mo. 934, 290 S.W.2d 152, and Quinn v. Buchanan, Mo.Sup., 298 S.W.2d 413, there was no evidence that the employers there involved were engaged in activities affecting interstate commerce. The presence of such evidence here is the distinguishing feature.

■ The requirement that the matters involve an employer-employee relationship affecting commerce having been satisfied, is this a case which, by virtue of the National Labor Relations Act, has been removed from state court jurisdiction?

The basic test for determination of this issue is found in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775:

" * * * [W]hen an activity is arguably subject to § 7 or § 8 of the [N.L.R.] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

"To require the States to yield to the primary jurisdiction of the National Board does not ensure Board adjudication of the status of a disputed activity. If the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end, and the States are ousted of all jurisdiction. Or, the Board may decide

that an activity is neither protected nor prohibited and thereby raise the question whether such activity may be regulated by the States."

The so-called "substandard picketing" here involved is activity arguably subject to § 7 or § 8 of the National Labor Relations Act. I.L.A. Local 1416 v. Ariadne Shipping Co., 397 U.S. 195, 90 S.Ct. 872, 25 L.Ed.2d 218; Local No. 438 Construction & General Laborers Union v. Curry, 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed.2d 514. See: Sheetmetal Workers' Intl. Assn. v. Florida Heat & Power, Inc., Fla.Sup.Ct., 230 So.2d 154; Ready-Mix Concrete Co. v. Truck Drivers & Helpers Local Union No. 696, 195 Kan. 154, 403 P.2d 191; Continental Slip Form Builders, Inc. v. Brotherhood of Construction & General Labor, Local Union, 195 Kan. 572, 408 P.2d 620.

The decisions of the United States Supreme Court on this issue are controlling. Prior cases in this Court, relied upon by respondent, such as Adams Dairy Co. v. Dairy Employees Union, 363 Mo. 182, 250 S.W.2d 481; 339 S.W.2d 811; and Adams Dairy, Inc. v. Burke, Mo., 293 S.W.2d 281, are not controlling. The first cited case did not consider the preemption doctrine. On the second appeal at 339 S.W.2d 811, the question of jurisdiction was raised but decided on the basis of lack of evidence of the interstate nature of Adams's business as it was conducted at the time the injunction was issued. Adams Dairy, Inc. v. Burke, supra, was decided prior to the Supreme Court decision in the second Garmon case, supra, which laid down the principles governing the application of the preemption doctrine in cases such as this. Respondent's contention that the matter here does not involve a "labor dispute" within the meaning of the National Labor Relations Act overlooks the definition of a "labor dispute," found in § 2(9) of the Act as including:

" * * * any controversy concerning terms, tenure or conditions of employment, or concerning the association or represen-

tation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in proximate relation of employer and employee."

See Continental Slip Form Builders, Inc. v. Brotherhood of Construction & General Labor, Local Union, supra, 195 Kan. 572, 576, 408 P.2d 620.

The trial court erred in overruling defendants' motion to dismiss for lack of jurisdiction. The judgment is reversed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., BARDGETT, J., and SEMPLE, Special Judge, concur; HOLMAN, J., not sitting.