No. 46,337

INLAND INDUSTRIES, INC., *Appellant and Cross-Appellee,* v. TEAM-STERS & CHAUFFEURS LOCAL UNION No. 541, *et al., Appellee and Cross-Appellant.*

(496 P. 2d 1327)

Opinion filed May 6, 1972.

*Edward H. Powers* and *Robert S. Lemon,* both of Kansas City, argued the cause and were on the brief for the appellant and cross-appellee.

*Timothy J. Evans,* of Kansas City, Kansas, and *John J. Manning,* of Kansas City, Missouri, argued the cause and were on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

FONTRON, J.: This is an action by the plaintiff, Inland Industries, Inc., to enjoin the defendants, Teamsters & Chauffeurs Local Union

No. 541, a labor organization, and its agents, servants or employees, from picketing the plaintiff's two hot mix asphalt plants in Kansas City, Kansas. The trial court denied the injunction and the plaintiff has appealed. The defendants have filed a cross appeal from the trial court's order staying judgment pending appeal and setting bond in the amount of $1000. We shall refer to the parties either as plaintiff and defendants or as Inland Industries, and Teamsters.

The essential facts are not seriously disputed. Inland Industries is engaged in producing hot mix asphalt for sale to other contractors and for its own use in paving or surfacing streets, highways, parking lots and airports. Its stock is owned entirely by Daniel E. Scherrer, a Kansas City contractor and business man, who also owns 100% of the stock in Inland Hauling Company, Inc., sometimes herein referred to as Inland Hauling. The business of the latter company is hauling asphalt and rock for various paving contractors, and some 95% of its business is done with the plaintiff. Approximately 52% of plaintiff's hauling costs are paid to Inland Hauling. Both companies office at 6834 Kaw Drive, Kansas City, Kansas.

The plaintiff, Inland industries, is a member of the Heavy Constructors Association of the greater Kansas City area, and as such it operates under a union contract with Teamsters, which is also a member of the association. Inland Hauling Company, on the other hand, has no contract with Teamsters although its drivers are members of the Teamsters Union. On August 5, 1970, Teamsters placed pickets at the asphalt plants of Inland Industries with placards reading "Inland Hauling Co. ON STRIKE, Teamsters L. U. 541." This action had a chilling effect on plaintiff's business and the present action for injunction was initiated the following day.

Plaintiff's petition alleged the placing of pickets at its asphalt plants carrying banners proclaiming that Inland Hauling had no contract with the union; that Teamsters had no controversy with Inland Industries; and that the picketing of plaintiff by Teamsters because of its dispute with Inland Hauling was unlawful, improper and contrary to the provisions of 29 U. S. C. A. § 158 (b) (7)(c). Plaintiff's prayer was for an injunction under the provisions of K. S. A. 60-904. A few days later an amended petition was filed similar in content to the original but alleging that "the situation concerned was not involved with the National Labor Relations Act for the reason that the acts complained of are neither

protected or prohibited by Federal law." A restraining order was issued when the case was first filed.

On August 14, 1970, the defendants filed a motion to dismiss and dissolve the restraining order on the grounds generally that the conduct complained of was either an unfair labor practice prohibited by § 8 (b) of the National Labor Relations Act (properly titled as the Labor Management Relations Act and hereinafter called the Act) or was protected activity under § 7 of said Act; that the subject matter of Inland Industries' complaint had been pre-empted by Congress through enactment of the aforesaid Act; and that exclusive jurisdiction was vested in the National Labor Relations Board (hereafter referred to as the Board).

The case was heard September 8, 1970, and on September 18 the trial court made the following findings:

"(1) That plaintiff herein is a 'neutral employer' within the meaning of the NMR Act of 1947, as amended.

"(2) That the unlawful picketing involved herein by defendants is a violation of Section 8 (b) (4) of said Act.

"(3) That violations of said Act have been pre-empted by the Congress and exclusive jurisdiction over said violations have been vested in the NLRB.

"(4) That the subject case is distinguished from Cooperative Refinery Assn. vs. Williams, 185 Kan. 410, for the reason that in the Coop Case at Page 420, the Court points out that there was nothing in the evidence to indicate that the neutral employer was doing business with the primary employer.

"(5) That defendant's Motion to Dissolve and Dismiss is sustained, and that the Restraining Order heretofore entered is ordered dissolved and the cause dismissed. Costs are taxed vs. plaintiff."

As we understand it, the basic issue in dispute is whether the federal government has pre-empted the area in which the controversy lies, so that action by the state is precluded. On the one hand, Inland Industries contends that the activity engaged in by Teamsters in picketing the property of a neutral employer, is neither protected nor prohibited by the Act and hence is subject to action on the state level as being in violation of K. S. A. 44-809, which reads as follows:

"It shall be unlawful for any person

. . . . . . . . . .

"(13) To picket beyond the area of the industry within which a labor dispute arises."

In support of this contention the plaintiff relies chiefly on *Cooperative Refinery Ass'n. v. Williams*, 185 Kan. 410, 345 P. 2d 709,

the decision in which will be discussed in more detail later in this opinion.

On the other hand, Teamsters maintains that Inland Industries is an employer subject to the Act and that the activity of which Inland Industries complains has been removed by Congressional action from the field of state regulation.

Thus the issues are joined so far as the plaintiff's appeal is concerned.

This court has duly recognized that Congress has in great part pre-empted the field of controversies arising between labor and management which affect interstate commerce, and that it has vested exclusive jurisdiction to determine such disputes in the National Labor Relations Board. (*Kaw Paving Co. v. International Union of Operating Engineers*, 178 Kan. 467, 290 P. 2d 110; *Texas Const. Co. v. H & P. E. Local Union No. 101*, 178 Kan. 422, 286 P. 2d 160; *Friesen v. General Team & Truck Drivers Local Union No. 54*, 181 Kan. 769, 317 P. 2d 366; *Asphalt Paving v. Local Union*, 181 Kan. 775, 317 P. 2d 349.)

We should say at this point it is conceded that plaintiff's business operations are interstate in scope and affect interstate commerce and, further, that they meet the Board's jurisdictional limits. Thus, Inland Industries' contention is narrowed down to this: Does the picketing engaged in by Teamsters constitute either a protected or an unfair labor practice within the purport of the Labor Management Relations Act, thereby foreclosing action by state agencies?

We are inclined to agree with the trial court in its finding that the picketing as alleged would be in violation of § 8 (*b*) (4) of the Act. (29 U. S. C. A. § 158 [*b*].) This section of the Act provides in pertinent part:

"(*b*) [I]t shall be an unfair labor practice for a labor organization or its agents—

.    .    .    .    .    .    .    .    .    .    .    .    .

"(4) (*i*) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (*ii*) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

.    .    .    .    .    .    .    .    .    .    .    .    .

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer,

processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: . . ." (p. 327.)

In *San Diego Unions v. Garmon*, 359 U. S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773, the federal Supreme Court made it abundantly clear that when an activity is debatably subject to the provisions of § 8 of the Act, defining unfair labor practices, that state courts must defer to the exclusive jurisdiction of the Board. On pages 244, 245, the court says:

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. . . .

"At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board. (Citing cases.)"

From our examination of the record we believe it arguable, at least, that the placing of pickets at Inland Industries' two asphalt plants was an unfair labor practice constituting a prohibited activity within the meaning and contemplation of § 8 (*b*) (4).

Inland Industries was found by the trial court to be a "neutral employer." This designation infers that it was wholly unconcerned with and not involved in Teamsters' dispute with Inland Hauling, the primary employer. (*J. G. Roy & Sons Co. v. National Labor Relations Bd.*, 251 F. 2d 771; *Truck Drivers & H. Local U. 728 v. Empire State Express*, 293 F. 2d 414.) Thus it is entirely arguable that the placement of pickets at Inland Industries' plants would constitute an unfair labor practice, or secondary boycott, falling under the ban of § 8 (*b*) (4) of the Act.

However, it is not within the competence of a state tribunal to determine whether or not Teamsters' activity would be an unfair labor practice prohibited by § 8 (*b*) (4). If it is arguable, as we

believe it is, that the activity falls within the prohibition of the Act, Congress has seen to it that the determination of that question lies within the Board's broad bosom. Any action by the state in such respect is a complete "no-no." The United States Supreme Court has been very emphatic in elucidating this point of view. (*San Diego Unions v. Garmon,* supra; *Garner v. Teamsters Union,* 346 U. S. 485, 98 L. Ed. 228, 74 S. Ct. 161.)

As we have previously mentioned, Inland Industries has placed great reliance on *Cooperative Refinery Ass'n. v. Williams,* supra. The trial court distinguished *Williams* on the ground there was no evidence to indicate that the neutral employer in that case was doing business with the primary employer. We believe the distinction is a valid one. On page 420 of the opinion this court said:

". . . [T]here is nothing in the evidence which indicates that the Association was doing business with CCA [the primary employer]. The neutral employer must be doing some business with the primary employer or there is no violation of section 8 (*b*) (4). *Retail Fruit & Veg. Clerks U. v. National Labor Rel. Bd.,* supra.)"

It is clear from the record in the present case that a close business relationship existed between Inland Industries and Inland Hauling. More than 95% of Inland Hauling's gross receipts were derived from business done with Inland Industries. Inland Hauling took care of over 50% of Inland Industries' hauling requirements. The trucking was done from Inland Industries' plants to the company's job sites. The two corporations operated out of a common office. No similar situation was shown to exist in the *Williams* case and this court arrived at the conclusion that the picketing did not have, as its object, the inducement or encouragement of the neutral employees to engage in a concerted refusal to work for the neutral employer or to handle the primary employer's products so that the neutral employer would cease doing business with the primary employer.

The defendants, in their brief, question the trial court's finding that Inland Industries is a neutral employer within the meaning of the Act, and they have submitted authorities on that point. The plaintiff has responded to the challenge by supplying citations of its own. We find it unnecessary, however, to engage in any inquiry into this area. In the first place the defendants have not cross appealed from that finding and, hence, the finding is not subject

to review. (*Autry v. Walls I. G. A. Foodliner, Inc.,* 209 Kan. 424, 497 P. 2d 303.)

In *James v. City of Pittsburg,* 195 Kan. 462, 407 P. 2d 503, we held:

"One who is an appellee is not entitled to present adverse rulings for review unless he has filed a cross-appeal pursuant to K. S. A. 60-2103 (*h*)." (Syl. ¶ 1.)

Secondly, whether plaintiff is or is not a neutral employer is of small consequence so far as federal pre-emption is concerned in view of the trial court's finding that Teamsters' picketing would be in violation of § 8 (*b*) (4), thus precluding state action.

The defendants' cross-appeal remains to be considered. The trial court entered a stay order pending appeal and set the amount of bond at $1000. In so doing the court commented that any final order as defined in K. S. A. 60-2102 was an appealable order and that K. S. A. 60-2103 (*d*) gives an appellant the right to a stay upon providing a supersedeas bond.

The defendants contend the trial court lacked jurisdiction to enter such an order, which in effect gave continued force to the initial restraining order. The defendant argues that the court, after finding that Congress had pre-empted the field and that exclusive jurisdiction was vested in the NLRB, had no authority thereafter to take further action in the case or to enter any further orders.

We are inclined to agree with the defendants' position. Having once decided that it had been stripped of jurisdiction by federal ukase, the trial court was bereft of authority to enter additional orders. This is not to imply that the plaintiff may not take an appeal under K. S. A. 60-2102, but only that the trial court was not empowered to enter any orders staying judgment pending appeal or fixing the amount of a supersedeas bond.

Our recent case of *Hornaman v. Vaughan,* 191 Kan. 42, 379 P. 2d 257, illustrates the point. The facts of that case were somewhat involved and need not be repeated, but the principle involved was stated in this fashion:

". . . [S]ince the trial court had no jurisdiction over the plaintiffs or the subject matter, it had no power or authority to make any orders governing the annual election of the association members, or the future actions of the managing officers. . . ." (p. 52.)

The Supreme Court of Michigan in a recent case, *Fox v. Board of Regents,* 375 Mich. 238, 134 N. W. 2d 146, phrased the rule in this fashion:

"When a court is without jurisdiction of the subject matter, any action with respect to such a cause, other than to dismiss it, is absolutely void." (p. 242.)

Support is also found in *American Const. Fire Assur. Co. v. O'Malley,* 342 Mo. 139, 113 S. W. 2d 795; *Lehman v. Lehman,* 312 Mich. 102, 19 N. W. 2d 502.

For the reasons stated the judgment of the court below is affirmed as to the appeal and reversed as to the cross appeal.