No. 55,748

WHELAN'S, INC., and VERNON JARBOE, and individual, *Appellees*, v. KANSAS DEPARTMENT OF HUMAN RESOURCES, *et al.*, *Appellants*, and WILLIAM F. ABBOTT, *et al.*, *Intervenors/Appellants*.

(681 P.2d 621)

Opinion filed April 27, 1984.

*Arnold Berman,* chief counsel, argued the cause and was on the brief for the appellants Kansas Department of Human Resources, *et al.*

*Thomas H. Marshall,* of Blake and Uhlig, P.A., of Kansas City, argued the cause and was on the brief for intervenors/appellants William F. Abbott, *et al.*

*Richard D. Anderson,* of Colmery, McClure, Letourneau, Entz & Merriam, P.A., of Topeka, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

HERD, J.: This is an appeal by the Kansas Department of Human Resources (KDHR) from a decision of the Shawnee County District Court enjoining the KDHR from proceeding under a wage claim made pursuant to K.S.A. 44-313 *et seq.*, on the theory that the KDHR action is preempted by the action of the National Labor Relations Board (NLRB).

Appellee Whelan's, Inc. is a company doing business in the State of Kansas and is subject to the provisions of K.S.A. 44-313 *et seq.* Appellee Vernon Jarboe is the chief executive officer of Whelan's Inc. and is subject to the provisions of K.S.A. 44-313 *et*

*seq.,* as found in K.S.A. 44-323(*b*). Intervenors are employees of Whelan's.

For a number of years, Whelan's maintained a collective bargaining relationship with its employees' designated bargaining agents, Truck Drivers Local No. 696, Carpenters Local No. 1940 and Carpenters Local No. 1445. On August 31, 1981, the collective bargaining agreements of Truck Drivers Local No. 696 and Carpenters Local No. 1940 expired. Negotiations on new agreements continued with work uninterrupted through late October, 1981. On October 12, 1981, Whelan's implemented a ten percent wage reduction for all employees from that contained in the expired collective bargaining agreements. Then on November 18, 1981, Whelan's reduced wages an additional fifteen percent. On October 26, 1981, each of the employees who are intervenors in this action went on strike.

On December 9, 1981, an unfair labor practice charge was filed with the NLRB (Case No. 17-CA-10751) by Truck Drivers Local No. 696, alleging Whelan's refused to pay accrued vacation benefits to striking employees in retaliation for their striking activities.

The NLRB then asserted its jurisdiction over the unfair labor practice charge. On January 20, 1982, general counsel for the NLRB issued a Complaint and Notice of Hearing, finding probable cause of a violation of the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* (1976), due to Whelan's refusal to pay striking employees their vacation pay.

On March 4, 1982, Whelan's executed a settlement agreement of the unfair labor practice charge, agreeing to pay all striking employees their accrued vacation pay at the current reduced wage rate. The settlement agreement was approved by the regional director of the NLRB on March 31, 1982. Before the settlement agreement was approved, the regional director considered and rejected arguments by the union that the vacation pay should have been calculated at the wage rate in existence when the vacation time was accrued, which was prior to the wage cuts. The union refused to enter into the settlement agreement because of the wage rate at which the accrued vacation pay was computed. The reduced amount of vacation pay was then paid to all striking employees by Whelan's. On June 18, 1982, the acting regional director advised the union and Whelan's the

terms of the settlement agreement had been carried out and the file was closed. No appeal was taken.

Thereafter, intervenors in the instant matter filed a claim for wages under K.S.A. 44-313 *et seq.* with the KDHR, alleging their accrued vacations should be paid at the wage rate in existence at the time the vacation wages were earned. The matter was set for hearing by the KDHR.

Appellees filed an action in Shawnee County District Court asking for a permanent injunction prohibiting the KDHR from proceeding with an administrative determination of the wage claims filed by intervenors. Appellees maintain the action by the KDHR is barred on the grounds of federal preemption. The district court on June 28, 1982, directed that all proceedings on the merits of the claims of the intervenors before the state agency be stayed pending a determination by the agency regarding preemption.

On November 24, 1982, the decision of the agency was rendered. The agency determined the claims of the intervenors were not preempted by the NLRA nor by the actions of the NLRB in connection with unfair labor practice charges which were filed by the Truck Drivers Local No. 696.

On April 12, 1983, the district court reversed the decision of the agency and concluded, as a matter of law, the claims of the intervenors were not within the jurisdiction of the agency. The court then granted the permanent injunction requested by appellees. The KDHR appeals.

The sole issue here is whether the district court erred, as a matter of law, when it held the KDHR was preempted by the NLRA from acting on the wage claims filed by the intervenors pursuant to K.S.A. 44-313 *et seq.*

The enactment of the NLRA in 1935 marked a fundamental change in this nation's labor policies. Congress expressly recognized collective organization of segments of the labor force into bargaining units which were capable of exercising economic power comparable to that possessed by employers could produce benefits for the entire economy. Congress decided the benefits of collective bargaining would outweigh the occasional costs of industrial strife associated with the organization of unions and the negotiation and enforcement of collective bargaining agreements. The previous notion that union activity was an illegal

"conspiracy" and that strikes and picketing were examples of unreasonable restraints of trade was displaced by an unequivocal national declaration of policy establishing the legitimacy of labor unionization and encouraging collective bargaining. Gorman, Labor Law 1-6 (1976).

The new federal statute protected the collective bargaining activities of employees and their representatives and created a regulatory scheme to be administered by an independent agency which would develop experience and expertise in the labor relations area. The new agency was denominated NLRB. The United States Supreme Court promptly decided the federal agency's power to implement the policies of the new legislation was exclusive, making the states powerless to enter overlapping rules. State labor law was preempted by the NLRA. See *Bethlehem Co. v. State Board,* 330 U.S. 767, 775-77, 91 L.Ed. 1234, 67 S.Ct. 1026 (1947).

The preemption principle is derived from the supremacy clause of Article 6 of the United States Constitution. Additionally, Article 1, Section 8 of the Constitution provides Congress with the exclusive authority to regulate any conduct affecting interstate commerce. By virtue of this authority, federal law may preempt or supersede any state law on the same subject. In passing federal legislation under the commerce clause, Congress has discretion to determine the extent to which a federal statute is to preempt or permit state regulation in the same field. Hence, the constitutional basis for the NLRA is the commerce clause. The preemption in this area arose from the interest in uniform development of the national labor policy which required that matters which fell squarely within the regulatory jurisdiction of the NLRB be evaluated exclusively by the agency. The Supreme Court recognized this in *Garner v. Teamsters Union,* 346 U.S. 485, 98 L.Ed. 228, 74 S.Ct. 161 (1953).

Until recently, Kansas has held state law is preempted by the NLRA from regulation of labor-management disputes. See *Inland Industries, Inc. v. Teamsters & Chauffeurs Local Union,* 209 Kan. 349, 496 P.2d 1327 (1972); *Hyde Park Dairies v. Local Union No. 795,* 182 Kan. 440, 321 P.2d 564 (1958); *Asphalt Paving v. Local Union,* 181 Kan. 775, 317 P.2d 349 (1957).

In 1959, the United States Supreme Court articulated a test to determine when the NLRA would preempt state law. The need

for such a test was necessary since despite the general preemption of state law by the NLRA, Congress still left much to the states, " ' "though Congress has refrained from telling us how much." ' " *San Diego Unions v. Garmon,* 359 U.S. 236, 240, 3 L.Ed.2d 775, 79 S.Ct. 773 (1959), quoting *Garner,* 346 U.S. at 488. The test to determine if the states must defer to the NLRB is whether an activity is arguably subject to § 7 or § 8 of the Act. *Garmon,* 359 U.S. at 245. Sections 7 and 8 of the NLRA cover both protected "concerted activities" and unfair labor practices. See 29 U.S.C. §§ 157, 158. The *Garmon* rule also included two previously recognized exceptions to preemption. These included matters of "peripheral concern" to the NLRB and when the "conduct touched interests so deeply rooted in local feeling and responsibility." 359 U.S. at 243-44. See also *Machinists v. Gonzales,* 356 U.S. 617, 2 L.Ed.2d 1018, 78 S.Ct. 923 (1958), and *Automobile Workers v. Russell,* 356 U.S. 634, 2 L.Ed.2d 1030, 78 S.Ct. 932 (1958). The Kansas Supreme Court has followed the *Garmon* doctrine. See *Continental Slip Form Builders, Inc. v. Local Union,* 195 Kan. 572, 408 P.2d 620 (1965).

The United States Supreme Court further refined the *Garmon* test in *Farmer v. Carpenters,* 430 U.S. 290, 51 L.Ed.2d 338, 97 S.Ct. 1056 (1977). *Farmer* established three criteria to help determine whether state regulation conflicted with federal jurisdiction. These criteria are: (1) when the underlying conduct was not protected by the NLRA and there was no risk that the cause of action would result in state regulation of conduct Congress intended to protect; (2) when there was an overriding state interest in protecting residents and this interest was deeply rooted in local feeling and responsibility; and (3) when there was little risk the state cause of action would interfere with the effective administration of national labor policy. 430 U.S. at 298.

In 1978, the United States Supreme Court further relaxed the rules of preemption pertaining to labor disputes. See *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 56 L.Ed.2d 209, 98 S.Ct. 1745 (1978). In *Sears,* a dispute arose between the San Diego Carpenters Union and a Sears department store when the union discovered Sears was using non-union labor. The union began picketing on Sears' property. After requests to leave were ignored by the picketers, Sears obtained an ex parte preliminary injunction to prohibit their activity. The California Supreme

Court ruled state court jurisdiction was preempted because the disputed conduct was arguably covered by the NLRA. The United States Supreme Court reversed. The Supreme Court noted the state forum must be opened to the employer in the case of peaceful trespassory picketers, otherwise, the employer would have no redress. The only remedies afforded the employer were to request the picketers to leave or physically expel them. The first remedy could be ignored and the latter creates a risk of tort liability. See Comment, *Labor Law: Expansion of State Court Jurisdiction in Labor-Management Controversies*, 19 Washburn L.J. 182, 185-86 (1979).

After *Sears*, the United States Supreme Court vacated and remanded a Kansas case for rehearing in light of *Sears*. See *Reece Shirley & Ron's Inc. v. Retail Store Employees Union & Local 782*, 222 Kan. 373, 565 P.2d 585 (1977), *vacated and remanded* 436 U.S. 924 (1978) (*Reece Shirley I*). On rehearing, the Kansas Supreme Court analyzed *Sears* in *Reece Shirley & Ron's, Inc. v. Retail Store Employees Union & Local 782*, 225 Kan. 470, 592 P.2d 433 (1979) (*Reece Shirley II*). The *Reece* case was similar to *Sears* in that it involved peaceful trespassory picketing. This court interpreted *Sears* to mean:

"that the scope of jurisdiction of Kansas trial courts should be broadened in situations where union trespassory picketing has occurred and the union failed to file a complaint with the NLRB following a demand of the employer to stop the trespassory picketing. Where that is the situation, a Kansas district court may enjoin or limit trespassory picketing where the district court finds that no right of the union under the NLRA has been violated or will be interfered with." *Reece Shirley II*, 225 Kan. at 476.

This court went further to explain the state court's jurisdiction when the NLRB has become involved in a case.

"If, however, a union, after receiving from the employer or property owner a notice to cease picketing, files a complaint with the NLRB and the board takes jurisdiction, a Kansas district court has the power to enjoin trespassory picketing only where there is shown to be actual violence or a threat of immediate violence or some obstruction to the free use of property by the public that immediately threatens public health and safety or that denies to an employer or his customers reasonable ingress and egress to and from the employer's place of business." *Reece Shirley II*, 225 Kan. at 476.

Our task here is to apply this constantly developing law of preemption in labor matters to the case at bar. The appellants and intervenors contend the activity covered in the wage claims

presented to the KDHR is not prohibited or protected under the NLRA, and thus, under the *Garmon* test, the State has jurisdiction over the wage issue. In support of this, the intervenors assert the cause they are pursuing is a different cause from the one presented to the NLRB. The issue presented to the NLRB as an unfair labor practice was that Whelan's refused to pay striking workers their vacation pay in retaliation for the strike, while having paid such benefits to nonstriking employees. Such is a discriminatory practice prohibited by the NLRA. The NLRA provides: "It shall be an unfair labor practice for an employer . . . by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ." 29 U.S.C. § 158(a)(3). Whelan's retaliatory action discriminated against labor union members. Under the NLRA, this is not allowed. The NLRA requires non-labor union members and labor union members to be treated equally in terms or conditions of employment. The employment term or condition involved before the NLRB was the refusal to pay striking employees the vacation pay which they had earned. Whelan's settled the issue prior to hearing by agreeing to pay the striking workers the same vacation pay the non-strikers had received. Since there was no longer the discrimination between striking and non-striking employees, the NLRB stated the purposes of the NLRA had been carried out and approved the settlement. The amount of wage in the settlement was merely peripheral to the unfair labor practice issue.

This left one issue, unrelated to the NLRA, unresolved. All employees receiving vacation benefits after October 12, 1981, received their vacation pay at the current lower wage rate rather than the wage rate at which they had earned the benefit. The striking employees were part of the group taking their vacation pay after October 12. They requested the NLRB require Whelan's to pay their vacation pay at the rate at which it was earned, the higher rate. The NLRB refused since the settlement agreement was consistent with the manner in which all employees, striking and non-striking, were paid vacation benefits. The NLRB found it was Whelan's policy to pay vacation benefits when received rather than when earned, thus the payment of the benefit at the lower rate to the striking employees was not

differential treatment of labor union members. The acting regional director of the NLRB stated in a letter dated January 15, 1982:

"As a result of the investigation, it does not appear that further proceedings . . . are warranted. The investigation disclosed that certain employees received vacation pay based on the Employer's final wage proposal prior to impasse in negotiations and the ensuing strike resulting from these negotiations. The investigation further disclosed that the Employer's past practice has been to pay vacation pay at the hourly rate being currently received by an employee at the time that the employee takes vacation. Based on these circumstances, I am refusing to issue a complaint [for violations of the NLRA]."

The regional director also communicated to the Union in a letter dated March 31, 1982: "In view of the undertakings contained in the attached settlement agreement, it does not appear that it would effectuate the purposes of the National Labor Relations Act to institute further proceedings." The fact that the benefits under state law might be required to be paid at the rate at which they were earned was irrelevant to the NLRB, since such an issue involved the application of state law and was thus not under the auspices of the NLRB. The board is precluded under federal law from resolving the wage issue. It is only empowered "to prevent any person from engaging in any unfair labor practice . . . affecting commerce." 29 U.S.C. § 160(a). The wage issue is not an unfair labor practice since it does not involve discrimination between union and non-union employees.

The issues, although involving the same employees, are completely distinct. The unfair labor practice issue has been resolved by the settlement approved by the NLRB. The other issue involving what is a fair wage has not been resolved. Under the three-faceted test of *Farmer v. Carpenters,* 430 U.S. at 298, the state alone has jurisdiction over the wage issue. It is not protected under the NLRA, does not affect national labor policy and is of great local concern.

The first factor of the *Farmer* test has already been discussed. As indicated, the wage issue is not protected under the NLRA. See 29 U.S.C. § 160. The wage issue does not affect national labor policy since the state issue "can be adjudicated without regard to the merits of the underlying labor controversy." 430 U.S. at 300. It is irrelevant to the KDHR if, in this case, the workers are labor union members. In fact, any other employee who received vacation benefits after October 12, 1981, regard-

less of union membership, is eligible to join in this action. The issue is merely whether Whelan's long-standing policy of paying all employees vacation benefits at the wage rate in force at the time of receipt rather than when it was earned is permissible under the Kansas Wage Payment Act, K.S.A. 44-313 *et seq.* This has no effect on national labor policy. The final factor, whether the interest involved was " ' "deeply rooted in local feeling and responsibility" ' ", is easily seen. 430 U.S. at 298. The great concern of this state with wage issues is evidenced by the existence of the wage payment act and the significant amount of litigation thereunder.

Finally, in applying the *Farmer* and *Garmon* cases to the instant case, the cautionary words of the United States Supreme Court in *Sears, Roebuck & Co. v. Carpenters*, 436 U.S.188, must be remembered:

"[T]he history of the labor pre-emption doctrine in this Court does not support an approach which sweeps away state-court jurisdiction . . . .
   'Our cases indicate  .  .  .  that inflexible application of the doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme.' [Citation omitted.] Thus the Court has refused to apply the *Garmon* guidelines in a literal, mechanical fashion."

We, therefore, conclude the issues of the unfair labor practice and the question as to the proper wage to be paid are distinct issues. The first is preempted by the NLRA and was properly resolved by the NLRB-approved settlement. The latter is a state issue, with which the NLRA is not concerned. This issue has yet to be resolved. The KDHR has jurisdiction to determine whether Whelan's policy of paying vacation benefits at the rate when received, as opposed to the rate when earned, is proper under the Kansas Wage Payment Act.

The judgment of the trial court is reversed and the injunction against the KDHR is dissolved.

SCHROEDER, C.J., dissenting: On the particular facts here presented the wage claims asserted by the intervenors before the Kansas Department of Human Resources (KDHR) were preempted by the action taken by the National Labor Relations Board (NLRB) which controls the decision in this case. The contention of the intervenors that the activity covered in the

wage claims presented to the KDHR is not prohibited or protected under the National Labor Relations Act (NLRA) is without merit for the following reasons.

The wage claim made by the intervenors pursuant to K.S.A. 44-313 *et seq.*, was initially pursued as an unfair labor practice before the NLRB by the labor union which represented the employee intervenors. The unfair labor practice charged was that Whelan's refused to pay accrued vacation benefits to striking employees in retaliation for their striking activities.

The NLRB asserted its jurisdiction over the unfair labor practice charge. Whelan's executed a settlement agreement of the unfair labor practice charge agreeing to pay *all striking employees their accrued vacation pay at the current reduced wage rate.* The settlement agreement was approved by the regional director of the NLRB. Before the settlement agreement was approved, the regional director of the NLRB considered and rejected arguments *by the union* (representing the employee intervenors) that the vacation pay should have been calculated at the wage rate in existence when the vacation time accrued, which was prior to the wage cuts.

Whelan's complied with the settlement agreement and on June 18, 1982, the acting regional director of the NLRB advised the union and Whelan's the terms of the settlement agreement had been carried out and the file was closed. *No appeal was taken by the labor union.*

By this action the intervenors seek to assert the wage rate issue before the KDHR after the NLRB had previously invoked its jurisdiction, upon the request of the union, and specifically determined the correct wage rate to be applied. Having lost the wage rate issue before the NLRB the intervenors now seek to circumvent the action of their union and proceed in a state action. That they cannot do.

The United States Supreme Court has made it clear that state court jurisdiction is preempted in cases where the NLRB has asserted jurisdiction over claims of unfair labor practices brought under § 8 of the NLRA. The reason for the preemption doctrine, to obtain uniform application of substantive rules and avoid conflicting adjudications, was clearly articulated in *Garner v. Teamsters Union,* 346 U.S. 485, 498-99, 98 L.Ed. 228, 74 S.Ct. 161 (1953). The court recognized that "when two separate rem-

edies [*i.e.*, state and federal] are brought to bear on the same activity, a conflict is imminent." 346 U.S. at 498-99. Commenting on this language, the court in *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 193-94, 56 L.Ed.2d 209, 98 S.Ct. 1745 (1978), stated:

"This reasoning has its greatest force when applied to state laws regulating the relations between employees, their union, and their employer. It may also apply to certain laws of general applicability which are occasionally invoked in connection with a labor dispute. . . . *In each case, the pertinent inquiry is whether the two potentially conflicting statutes were 'brought to bear on precisely the same conduct.'* " (Emphasis added.)

In *San Diego Unions v. Garmon*, 359 U.S. 236, 244-45, 3 L.Ed.2d 775, 79 S.Ct. 773 (1959), the court recognized exceptions to the federal preemption doctrine where the activity complained of was merely a peripheral concern of the NLRA, or touched interests so deeply rooted in local feeling and responsibility that it could not be inferred that Congress has deprived the States of the power to act. Emphasized throughout the court's decision is the necessity to avoid potential conflicts between state and federal regulatory schemes. At one point the court states, "In determining the extent to which state regulation must yield to subordinating federal authority, we have been concerned with delimiting areas of potential conflict; potential conflict of rules of law, of remedy, and of administration." 359 U.S. at 241-42. The court later stated:

"The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy." 359 U.S. at 246.

Of particular relevance to the case at hand is this final note of caution:

"It may be that an award of damages in a particular situation will not, in fact, conflict with the active assertion of federal authority. The same may be true of the incidence of a particular state injunction. To sanction either involves a conflict with federal policy in that it involves allowing two law-making sources to govern. *In fact, since remedies form an ingredient of any integrated scheme of regulation, to allow the State to grant a remedy here which has been withheld from the National Labor Relations Board only accentuates the danger of conflict.*" (Emphasis added.) 395 U.S. at 247.

Subsequent Supreme Court cases have reiterated that concurrent state court jurisdiction cannot be permitted where there is a realistic threat of interference with the federal regulatory

scheme. See *Farmer v. Carpenters,* 430 U.S. 290, 305, 51 L.Ed.2d 338, 97 S.Ct. 1056 (1977).

In *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, the Supreme Court broadened the scope of the authority to be exercised by state courts where trespassory picketing occurs in the course of a labor dispute. Of major importance in that case was the fact that the employer, Sears, was powerless to obtain a labor board ruling on whether the union trespass was federally protected. Such board determination could have been obtained only if the union had filed an unfair labor practice complaint with the NLRB. The court again stressed that the factor of primary concern is whether there is a risk that state action will interfere with the jurisdiction of the NLRB. At one point the court stated:

> "*The primary-jurisdiction rationale unquestionably requires that when the same controversy may be presented to the state court or the NLRB, it must be presented to the Board.* [Emphasis added.] But that rationale does not extend to cases in which an employer has no acceptable method of invoking, or inducing the Union to invoke, the jurisdiction of the Board. We are therefore persuaded that the primary-jurisdiction rationale does not provide a *sufficient* justification for preempting state jurisdiction over arguably protected conduct when the party who could have presented the protection issue to the Board has not done so and the other party to the dispute has no acceptable means of doing so." 436 U.S. at 202-03.

The court emphasized this was *not* a case where the controversy presented to the state court could have been, but was not, presented to the labor board. Because Sears had no method available to it to invoke the jurisdiction of the NLRB and the union had not filed an unfair labor practice complaint with the board, there was no risk of overlapping jurisdiction or conflicting adjudications in this case.

In the past the Kansas Supreme Court has broadly applied the federal preemption doctrine enunciated in *Garmon* in determining whether state courts have jurisdiction to hear cases involving labor disputes. See, *e.g., Reece Shirley & Ron's Inc. v. Retail Store Employees Union & Local 782 (Reece Shirley I),* 222 Kan. 373, 565 P.2d 585 (1977), *vacated and remanded* 436 U.S. 924 (1978), *affirmed as modified* 225 Kan. 470, 592 P.2d 433 (1979) *(Reece Shirley II); Inland Industries, Inc. v. Teamsters & Chauffeurs Local Union,* 209 Kan. 349, 352-54, 496 P.2d 1327 (1972). In so doing, the court has exhibited a marked reluctance

to apply the exceptions to the preemption doctrine set forth in *Garmon* where the issue is arguably within the scope of the NLRB's jurisdiction or there is potential for conflict between the state and federal forums. In *Inland Industries,* 209 Kan. at 353-54, the court stated:

"If it is arguable, as we believe it is, that the activity falls within the prohibition of the Act, Congress has seen to it that the determination of that question lies within the Board's broad bosom. Any action by the state in such respect is a complete 'no-no.' The United States Supreme Court has been very emphatic in elucidating this point of view."

In *Reece Shirley II,* 225 Kan. 470, the court narrowly construed the holding in *Sears,* emphasizing that where the same controversy may be presented to the state court or the NLRB, it must be presented to the board. 225 Kan. at 475. The court held that in cases where an employer seeks to enjoin picketing activities, where the union files a complaint with the NLRB and the board takes jurisdiction, the state court has the power to enjoin trespassory picketing only where there is a threat of violence or some obstruction to the free use of property by the public. 225 Kan. at 476.

The decisions in *Garmon, Farmer* and *Sears,* relied on in the majority opinion, are of questionable application in cases such as this one where the NLRB has exercised its jurisdiction, upon the request of the union, over the specific issue which is now being asserted in the state forum. *Garmon* involved a situation where an arguably prohibited act had been committed, but the NLRB declined to exercise its jurisdiction because of an insubstantial effect on interstate commerce. In *Farmer* it was held the state could properly assume jurisdiction over a tort action where, although the arguable federal violation and the alleged state tort arose out of the same factual situation, the respective controversies presented to the state and federal forums would not have been the same and there was little, if any, threat of interference with the federal regulatory scheme. The *Sears* case created an exception to the preemption rule discussed in *Garmon* which applies in cases where, although the activity may be arguably protected under the NLRA, no party has filed an unfair labor practice charge with the NLRB and the party seeking redress from the state forum is unable to invoke the jurisdiction of the Board.

The instant case departs from the situations involved in *Garmon, Farmer* and *Sears,* insofar as the board exercised its jurisdiction over the unfair labor practices claim asserted by the union and specifically determined the wage rate issue which is now asserted by the intervenors before the KDHR. The activity complained about — the failure to pay accrued vacation benefits and the rate at which such is to be paid — is the subject matter of both proceedings. The intervenors are attempting to pursue two separate remedies, federal and state, arising out of the same activity by the employer. The Supreme Court has often recognized that conflict in such cases is imminent. In *Garmon* the court clearly warned that to allow the state to grant a remedy which has been withheld by the NLRB only accentuates the danger of conflict. This is such a case. The intervenors assert the identical wage rate issue here which they raised in the unfair labor practice proceeding before the NLRB. By filing the wage claim before the KDHR the union and intervenors are merely attempting to circumvent the labor board's specific determination on the issue of the appropriate wage rate to be paid for the accrued vacation benefits. The NLRB determined the employer lawfully computed the rate at which accrued vacation time was paid under the settlement agreement. If the KDHR approves a wage rate different from that approved by the labor board, it will directly conflict with the remedy allowed by the labor board in the unfair labor practice proceeding. The decision in this case has the effect of allowing the KDHR to overrule the decision of the NLRB on the wage rate determination. Under the preemption doctrine enunciated in *Garmon,* such a direct conflict between federal and state forums cannot be sanctioned by this court. Once the NLRB has assumed jurisdiction and made a determination on this specific issue its *exclusive* jurisdiction cannot be ousted by a proceeding on the same issue in a state forum.

The majority's view, that the wage rate claim is merely a peripheral concern to the unfair labor practice claim, too narrowly limits the jurisdiction and authority of the NLRB to determine issues relating to labor disputes. At first blush, the unfair labor practice claim and wage rate issue may appear to be two separate and distinct actions. However, when the actions are examined for the result they both seek, the distinction vanishes.

Both an action under the NLRB and one under the Kansas Wage Act seek payment of vacation benefits. Of even greater importance, the majority opinion overlooks the fact that in this case the wage rate issue was specifically argued before the NLRB and that board expressly determined that the correct rate was applied by Whelan's in calculating vacation benefits due. The United States Supreme Court has made it clear that caution should be exercised in approving state court jurisdiction over labor disputes where conflict, actual or potential, between federal and state forums is apparent. In the past this court has expressed its disapproval of the involvement of a state forum in labor disputes where the NLRB has assumed jurisdiction in the dispute. Under the *Garmon* test, which strictly favors preemption, the action in this case is preempted by the action of the NLRB on the wage rate issue.

It is respectfully submitted the judgment of the lower court should be affirmed.

McFARLAND, J., joins the foregoing dissenting opinion.